**Willie A. HARRIS, Appellee,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, DIVISION OF MENTAL RETARDATION--DEVELOPMENTAL DISABILITIES SERVICES; Dr. Ray Nelson, Commissioner of Developmental Disabilities Services, and Louis Brown, Superintendent, Booneville Unit, Developmental Disabilities Services, Appellants.**

No. 84–2113.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1985.

Decided Aug. 29, 1985.

E. Jeffery Story, Asst. Atty. Gen., Little Rock, Ark., for appellants.

C. Richard Lippard, Booneville, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

The Arkansas Department of Human Services, Division of Mental Retardation—Developmental Disabilities Services, Dr. Ray Nelson, Commission of Developmental Disabilities Services, and Louis Brown, Superintendent, Booneville Unit, Developmental Disabilities Services, appeal from an order entered in the District Court [1] for the Western District of Arkansas denying their motion for reconsideration of a summary

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

judgment in favor of Willie A. Harris in a Title VII civil rights action. For reversal appellants argue that the district court abused its discretion in denying the motion for reconsideration in light of the errors in the stipulation of facts, which errors were not known to appellants until after the court had entered judgment. For the reasons discussed below, we affirm the district court's order denying reconsideration.

The facts as set forth below are taken substantially from the district court's unpublished memorandum opinion. *Harris v. Arkansas Department of Human Services*, No. 81–2262 (W.D.Ark. July 3, 1984). Appellee, a white male, was hired in 1978 by the Booneville Unit of the Arkansas Department of Human Services as an institutional instructor I. In 1981 a vacancy occurred in the staff development specialist II (SDS II) position at the Booneville Unit. Appellee, Cheryl Hawkins (a black woman who had been working as an SDS II in the Alexander Unit of the Department of Human Services) and a number of other individuals applied for this position. Appellants reviewed the applications and evaluated them on the basis of the "KSAP" method.

KSAP is an acronym for Knowledge, Skills, Ability and Personal Attributes and refers to a method of rating applicants in which certain attributes or abilities are assigned different weights in order to determine a composite score. All candidates are given a point total based on their rating from 0 to 10 on each particular knowledge, skill, ability or personal characteristic multiplied times the relative weight of the particular factor. The point totals reflect the relative qualification of the candidates and the candidate with the highest total is considered best qualified. If the point totals of two applicants are within 10 to 15 points, the applicants are considered equal. If two applicants are equal in total score, then the state's affirmative action plan requires that preference be given to a "protected status" applicant if the protected status group is "underutilized" in the position to be filled.

Appellee's KSAP score was 405 and Hawkins' KSAP score was originally computed at 382—a point differential of 23 points and therefore beyond the 10 to 15 equivalent point range. On the basis of the KSAP scores, appellants appointed appellee to the SDS II position. On the same day, Hawkins filed an internal grievance. Upon investigation it was determined that one of the evaluators had improperly weighted one of the factors on Hawkins' KSAP. The factor, "works cooperatively with others," was improperly weighted as a skill instead of a personal characteristic. Correctly computed, Hawkins' KSAP score was 396 or within 9 points of appellee's 405 and well within the 10 to 15 equivalent point range. Thus, appellee and Hawkins should have been considered equally qualified for promotion.

Because appellee had already been appointed by the time the internal investigation had been completed, appellants referred the matter to the state attorney general. In a letter dated August 10, 1981, the attorney general's office stated that Hawkins' denial of promotion was "probably not racially motivated ..., [was] the result of too much emphasis on promoting someone from within the Booneville Unit, but that the promotion of [appellee] rather than Hawkins was legally indefensible." On October 12, 1981, appellants demoted appellee to his former position of institutional instructor I with a loss of grade and salary and promoted Hawkins to the SDS II position. In 1982 Hawkins resigned. Appellee then applied for the vacant SDS II position and was promoted effective July 1982.

In November 1981, prior to his promotion to the SDS II position, appellee filed this lawsuit alleging reverse discrimination. The parties subsequently filed cross-motions for summary judgment on the basis of a joint stipulation of facts. The district court found that appellants had discriminated against appellee and awarded damages equal to the amount of backpay appellee lost as a result of his demotion—the difference between his salary as an institutional instructor I and an SDS II from

October 12, 1981, to July 19, 1982. The district court concluded that the affirmative action plan was inapplicable because protected status individuals held two of the five SDS II positions and therefore were not underutilized at the SDS II position. *Harris v. Arkansas Department of Human Services,* slip op. at 9. The district court also held that the remedy used by the state—the bumping of appellee, an innocent white employee, from the SDS II position in order to promote Hawkins—was an inappropriate remedy. *Id.*

Appellants subsequently filed a motion for reconsideration alleging that the facts contained in the district court's memorandum opinion were erroneous. The district court denied the motion for reconsideration and this appeal followed.

The sole issue which this court considers on appeal is whether the district court abused its discretion in denying the post-trial motion for reconsideration. Appellants argue that some of the facts contained in the joint stipulation, which facts were critical to the district court's evaluation of the appellants' utilization of the affirmative action plan, are inaccurate. Specifically, appellants argue that there were *seven* SDS II positions statewide in the Department of Developmental Disabilities and that of these seven positions only *one* was held by a protected status individual. Appellants argue, however, that the exact number of SDS II positions is irrelevant because the district court should have considered the *total* number of positions comparable in terms of education and expe-

rience to the SDS II position.[2] Appellants argue that protected status persons were underutilized in this group designated "official, administrators, and professionals." At Booneville *none* of these positions was held by a black even though blacks represented 15.4% of the statewide employment pool for this group.

Appellee argues that appellants should be bound by the stipulation of facts because the stipulation was based on information furnished by appellants. Further, appellee argues that appellants had repeatedly been given the opportunity to revise and modify the stipulation prior to the submission to the district court.

"Voluntary stipulations of facts are conclusive and can be controverted on appeal only under exceptional circumstances." *Kealy v. Harter,* 682 F.2d 198, 201 (8th Cir.1982); *see Fenix v. Finch,* 436 F.2d 831, 837 (8th Cir.1971); *Hoffman v. Celebrezze,* 405 F.2d 833, 836 (8th Cir.1969). The stipulation of facts in this case is only nine pages long and the facts stipulated are not complex or technical. Appellants do not explain how the alleged error occurred which resulted in their stipulating that two of the five staff SDS II positions were filled by black persons when in fact only one of the seven SDS II positions was filled by a black. The district court in denying appellants' motion for reconsideration implicitly held that no extraordinary circumstances existed which required that the stipulation be set aside. A district court under Fed.R.Civ.P. 59[3] has broad discre-

---

**2.** Appellants argue that the position of SDS II is part of a classified group of positions that requires substantially equal education and job preparation. This group includes SDS II, institutional instructor II, and vocational rehabilitation instructor II positions. For purposes of affirmative action, each of these positions is part of the group. Appellants argue that this entire group should have been scrutinized to determine whether blacks were underutilized.

**3.** Motions for reconsideration have been characterized as motions under Fed.R.Civ.P. 59. *A.D. Weiss Lithograph v. Illinois Adhesive Products Co.,* 705 F.2d 249, 249–50 (7th Cir.1983) (per curiam) or as motions under Fed.R.Civ.P. 60. Some courts consider the substance of a motion

in determining whether a post-judgment motion is a motion to alter or amend judgment under Rule 59(e) or a motion for release from judgment under Rule 60(b). *Smith v. U.S. Parole Comm'n,* 721 F.2d 346, 348 (11th Cir.1983); *Bank of California, N.A. v. Arthur Andersen & Co.,* 709 F.2d 1174, 1176 (7th Cir.1983). Other courts consider any motion filed within ten days after the entry of judgment which questions the correctness of the judgment to be a motion to alter or amend judgment. *Venable v. Haislip,* 721 F.2d 297, 299 (10th Cir.1983); *Vreeken v. Davis,* 718 F.2d 343, 345 (10th Cir. 1983). The trial court has broad discretion in deciding motions under Fed.R.Civ.P. 59, *Bond v. IMFS, Inc.,* 727 F.2d 770, 771 (8th Cir.1984) (per

tion in determining whether to reopen a case. *Pitts v. Electro-Static Finishing, Inc.,* 607 F.2d 799, 803 (8th Cir.1979). The court's decision will not be reversed by a court of appeals in the absence of a clear showing of abuse of discretion. *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983); *see Bond v. IMFS, Inc.,* 727 F.2d 770, 771 (8th Cir.1984) (per curiam); *Barnes v. Wyrick,* 719 F.2d 962, 963 (8th Cir.1983) (per curiam). We hold that the district court did not abuse its discretion in denying the motion for reconsideration in the absence of extraordinary circumstances justifying the setting aside of the stipulation of facts.

Accordingly, we affirm the judgment of the district court. We express no opinion on the merits of appellee's claim or on the validity of any portion of the state's affirmative action plan.

curiam), or Fed.R.Civ.P. 60, *Nyberg v. City of Virginia,* 667 F.2d 754, 758 (8th Cir.1982), *cert. denied,* 462 U.S. 1125, 103 S.Ct. 3102, 77 L.Ed.2d 1358 (1983).